# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY VICEK, | Case No. ED CV 11-1447 JCG |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Jerry Vicek ("Plaintiff") challenges the Social Security Commissioner's decision denying his application for disability benefits. Specifically, Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected the opinion of Plaintiff's treating psychiatrist, Dr. David Aryanpur. (Joint Stip. at 4.) The Court agrees with Plaintiff.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as

an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where the "treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

Here, non-examining state agency consultants disagreed with the treating psychologist, Dr. Aryanpur, as to the extent of Plaintiff's disability. (*See* AR at 33.) In his decision, the ALJ sided with the non-examining consultants and gave the treating opinion "[l]ittle weight." (*Id.*) In support, the ALJ found that Dr. Aryanpur's opinion (1) overstated the extent of Plaintiff's hallucinations, (2) exaggerated Plaintiff's appearance and cleanliness, and (3) was a product of conflicting interests. Applying the specific and legitimate standard, the Court addresses – and rejects – each of these reasons in turn.

    A.    The Extent of Plaintiff's Hallucinations

The ALJ first notes that Plaintiff, despite continuing to experience hallucinations, has "acknowledged that [they have] decreased with medication."[1] (AR at 34.) Presumably, then, the ALJ believes that Dr. Aryanpur exaggerated the extent of Plaintiff's hallucinations. This conclusion, however, is troubled by two

---

[1] In the same sentence, the ALJ also mentions that "while the claimant had a flat or blunt affect and continued to report experiencing hallucinations, he . . . was consistently noted as having attention and concentration that were within normal limits." (AR at 34.) The Court is unable to discern the relevance of these statements, and notes that this lack of clarity strengthens its finding that a specific and legitimate reason was not provided here.

facts.

First, and most concerning, both of Dr. Aryanpur's work capacity assessments are *silent* in regards to Plaintiff's hallucinations. (*See* AR at 323-24, 330-32.) His opinion, therefore, could not have exaggerated these symptoms, as the ALJ alleged. (*See* AR at 34.)

Second, the bite of the ALJ's criticism is significantly reduced by Dr. Aryanpur's own records, which also recognize that Plaintiff's hallucinations have improved. (*See* AR at 300 ("getting better"), 339 ("a little better – mostly at night"), 343 ("a little better"), 347 ("a little better . . . but still [occurs] daily"), 358 ("[down] from before"),  365 ("less intense" and "able to ignore them slightly"); *see also* 360 (indicating positive response to medication), 364-65 (same), 367 (same), 370 (same).) To discredit Dr. Aryanpur for not being cognizant of these improvements – as the ALJ did – would therefore ignore the record as a whole. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (permitting reversal when ALJ's findings are "not supported by substantial evidence in the record as a whole").

In short, the evidence presented here by the ALJ does not actually conflict, and thus the present reason does not qualify as a specific and legitimate one. *See Magallanes*, 881 F.2d at 751 (requiring "a detailed and thorough summary of . . . conflicting clinical evidence").

### B. Plaintiff's Appearance and Cleanliness

The ALJ next found that Dr. Aryanpur also exaggerated Plaintiff's appearance and cleanliness, stating that "[w]hile [Plaintiff] was disheveled on a few occasions, his appearance has been more often noted as being appropriate." (AR at 34.) This finding, however, is inadequate for three reasons.

First, the ALJ's observation concerning the frequency of Plaintiff's poor appearance, even if true, is beside the point. Dr. Aryanpur judged Plaintiff's appearance not by frequency, but by what is required to maintain employment. For instance, in his July 12, 2010 assessment, a guide explained Dr. Aryanpur's answer

as involving a "substantial loss of ability to perform the *work-related* activity." (*See* AR at 323 (emphasis added).)

Similarly, in his July 15, 2010 evaluation, Dr. Aryanpur was asked to "determine [Plaintiff's] ability to do *work-related* activities on a day-to-day basis in a regular work setting." (*Id.* at 330 (emphasis added).) Only in this context did Dr. Aryanpur discuss Plaintiff's "ability . . . to adhere to basic standards of neatness and cleanliness." (*Id.* at 331.) Put simply, the standard to sustain employment is not whether one appears clean more often than not. Undoubtedly, employers have higher expectations from their employees, and by failing to appreciate this difference, the ALJ's criticism misses the mark.

Second, Dr. Aryanpur exhibited a significant degree of caution in assessing Plaintiff's appearance. In his July 12, 2010 assessment, Dr. Aryanpur described Plaintiff's ability to adhere to basic standards of neatness and cleanliness as "[s]eriously limited, *but not precluded*." (AR at 324 (emphasis added).) According to the guide, this meant that Plaintiff's appearance was, among other things, "less than satisfactory." (*Id.*) Likewise, in his July 15, 2010 evaluation, Dr. Aryanpur described the same ability as "marked," which again meant "severely limited, *but not precluded*." (AR at 330-31 (emphasis added).) Taken as a whole, these responses reflect an even-handed understanding that Plaintiff had significant, but certainly not pervasive difficulties with his appearance and cleanliness.

Third, and relatedly, these moderate findings are not without support. Indeed, the record contains numerous references to Plaintiff's disheveled appearance. (*See* AR at 307 (noting Plaintiff's "greasy hair, holes in [his] jacket, [and] clothes [with] soil stains"), 372 (mentioning Plaintiff's body odor); *see also* AR at 285, 290, 305, 343, 358, 364.)

Thus, the ALJ failed to demonstrate that Dr. Aryanpur exaggerated Plaintiff's appearance or cleanliness. The specific and legitimate standard, therefore, was not met here.

4

### C. Dr. Aryanpur's Alleged Conflict of Interest

The ALJ's final reason in support of his credibility determination involves an allegation that Dr. Aryanpur "was assisting [Plaintiff] with his disability claim." (AR at 34.) The ALJ failed to explain this accusation any further, and thus failed to provide a specific and legitimate reason supporting his credibility determination. *See Magallanes*, 881 F.2d at 751 (requiring "a detailed and thorough summary of the facts" supporting credibility findings).

For the sake of thoroughness, however, the Court assumes a conflict is being implied because Dr. Aryanpur's opinions were offered in response to questionnaires from Plaintiff's counsel. (*See* AR at 323-24, 330-31.) Such cooperation is to be expected, however, and does not suggest that Dr. Aryanpur's *answers* were untruthful or untrustworthy.

Thus, for the above reasons, the ALJ failed to offer any specific and legitimate reasons to support his rejection of Dr. Aryanpur's credibility. Without such reasons, the mere existence of contrary, non-examining opinions – as is the case here – cannot discredit the treating opinion. *Lester*, 81 F.3d at 831. Accordingly, the Court determines that the ALJ's decision is not supported by substantial evidence. *See Mayes*, 276 F.3d at 458-59.

### D. Reversal and Remand is Warranted

With error established, this Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See id.* at 594.

5

Here, in light of the ALJ's error, Dr. Aryanpur's credibility must be properly assessed. Therefore, on remand, the ALJ shall reevaluate the opinions of Dr. Aryanpur and either credit them as true, or provide valid reasons for any portion that is rejected.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.[2]

Dated: September 25, 2012

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

---

[2] In light of the Court's remand instructions, it is unnecessary to address Plaintiff's remaining contentions. (*See* Joint Stip. at 11-14, 17.)